Filed 11/12/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRISTA ANN YOUNG, | |
|    Plaintiff and Respondent, | G064034 |
|      v. | (Super. Ct. No. 30-2021-01188579) |
| STANLEY HARTFORD, as Trust Protector, etc., et al., | O P I N I O N |
|    Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Erin Rowe, Judge. Dismissed. Motion for sanctions. Denied. Defendants' first request for judicial notice. Granted in part and denied in part. Plaintiff's request for judicial notice. Granted. Defendants' second request for judicial notice. Denied.

Law Offices of Michael Leight and Michael Leight for Defendants and Appellants.

FEM Law Group and F. Edie Mermelstein for Plaintiff and Respondent.

*          *          *

This case presents a novel or nearly novel recurring question of appealability: Are orders suspending trustees and appointing interim trustees in probate court directly appealable? We publish this opinion to provide a clear answer: they are not.

STATEMENT OF FACTS

Defendant Stanley Hartford is the trust protector and defendant Debbie Fleshman is the trustee of the Carolyn Patricia Young Family Trust. Plaintiff is a current beneficiary of the trust. Plaintiff Christa Ann Young alleges defendants are conspiring to improperly withhold trust funds from plaintiff and from certain charities that the trust dictates should receive a portion of the net income of the trust annually.[1] The alleged purpose of the conspiracy is to preserve assets for the benefit of defendant Debbie Fleshman, who (in addition to being trustee) is a residuary beneficiary of the trust, and will inherit half its proceeds upon plaintiff's death.

PROCEDURAL HISTORY

Plaintiff filed an ex parte application seeking the suspension of defendants' powers arising from their respective roles as trust protector and trustee of the trust and appointment of a private professional fiduciary as interim trustee. The trial court granted the ex parte application and issued a

---

[1] We grant defendants' unopposed first request for judicial notice as to plaintiff's verified trust petition, the trust documents themselves, plaintiff's ex parte application, and defendants' opposition to the ex parte application (exhibits 1, 3, 5, & 6). We deny the request for judicial notice as to the remaining documents, as they do not affect the merits of our decision.

2

minute order with the following five components: (1) suspending the powers of trustee Debbie Fleshman and trust protector Stanley Hartford; (2) appointing a private professional fiduciary as interim trustee; (3) requiring the interim trustee to post a bond; (4) setting a review hearing; and (5) prohibiting the interim trustee from using trust assets for compensation without prior authorization of the court. Defendants appealed.

Plaintiff filed a motion to dismiss the appeal before completion of the record on appeal, supported by a declaration of plaintiff's attorney. Defendants opposed the motion, filing their own competing declaration, request for judicial notice, and evidentiary objections.[2]

## DISCUSSION

### I.

### BASIC PRINCIPLES

"A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.) "The right to appeal is wholly statutory." (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 (*Dana Point*).) We consider each portion of the challenged order separately for appealability under these rules.

Finality is a powerful theme in appealability jurisprudence. In ordinary civil cases, appeals are generally not permitted except from the final judgment (though there are many exceptions to this rule). (*Dana Point*,

---

[2] We decline to rule on defendants' evidentiary objections to the declaration of plaintiff's attorney in support of the motion to dismiss. In reaching our decision herein, we rely only on documents filed in the trial court, and not on plaintiff's attorney's characterizations of any of those documents or of the proceedings below.

*supra*, 51 Cal.4th at p. 5.) The purpose of this rule is "to prevent "'piecemeal disposition and multiple appeals"' which "'tend to be oppressive and costly. [Citation.] Interlocutory appeals burden the courts and impede the judicial process in a number of ways: (1) They tend to clog the appellate courts with a multiplicity of appeals. . . . (2) Early resort to the appellate courts tends to produce uncertainty and delay in the trial court. . . . (3) Until a final judgment is rendered the trial court may completely obviate an appeal by altering the rulings from which an appeal would otherwise have been taken. [Citations.] (4) Later actions by the trial court may provide a more complete record which dispels the appearance of error or establishes that it was harmless. (5) Having the benefit of a complete adjudication . . . will assist the reviewing court to remedy error (if any) by giving specific directions rather than remanding for another round of open-ended proceedings." [Citations.]"' (*Id.* at pp. 5–6.)

This concept of finality is handled differently in probate court proceedings. Where an ordinary civil case is conceptually structured around a dispute between parties, probate court proceedings are structured around a fiduciary relationship (a probate estate, guardianship, conservatorship, or trust). An ordinary civil case ends with the resolution of the dispute via a judgment or dismissal, while a probate court case will often continue long after the resolution of the original problem or dispute that brought the matter to court. Cases in probate court often persist for long periods of time and may encompass many separate disputes between different parties, each with its own dispositive motion or trial and resulting order. As a result, there is no "final judgment" to serve as the bedrock concept of appealability in probate court.

Instead, the Probate Code makes certain specific categories of orders appealable. Probate Code section 1300 lists categories of appealable orders in all probate court proceedings.[3] Sections 1301 through 1304 list categories of appealable orders specific to different types of probate court proceedings. In probate court proceedings, "the Probate Code provisions concerning appealability are exclusive."[4] (*Kalenian v. Insen* (2014) 225 Cal.App.4th 569, 575.) As this is a trust dispute, the relevant sections are Probate Code section 1300 (the general probate court appealability statute) and section 1304 (the statute applicable to trust proceedings).

We emphasize, however, that despite these procedural distinctions, the probate court appealability structure also embraces finality as a concept. The categories of orders listed in Probate Code section 1300 are, for the most part, substantive in character and broadly comparable to the

---

[3] All further statutory references are to the Probate code unless otherwise stated.

[4] It's not clear that this is precisely true. For example, it appears to have gone unquestioned that certain orders rendered in probate court proceedings may also be made appealable by other statutory provisions in the Code of Civil Procedure or elsewhere, despite the absence of a provision of the Probate Code rendering the order appealable. (See, e.g., *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864 [considering appeal of denial of anti-SLAPP motion in trust dispute, made appealable only by Code of Civil Procedure]; *Royals v. Lu* (2022) 81 Cal.App.5th 328, 341, fn. 7 [holding right to attach order in probate court elder abuse matter appealable under Code of Civ. Proc. 167 § 904.1, subd. (a)(5)]; *Greco v. Greco* (2016) 2 Cal.App.5th 810 [same in probate proceeding]; but see *Conservatorship of Smith* (1970) 9 Cal.App.3d 324, 327–328 [holding denial of motion to disqualify attorney in a probate court matter nonappealable, despite appealability of such an order in any other civil matter].) Regardless, we consider only the Probate Code's appealability rules, as in their absence it appears clear that the Code of Civil Procedure would render this order nonappealable.

sorts of judgments and orders that are appealable in ordinary civil cases under the Code of Civil Procedure. They include orders "[s]ettling an account of a fiduciary," "approving or confirming the acts of a fiduciary," "[d]irecting or allowing payment of a debt, claim, or cost," and "[f]ixing, authorizing, allowing, or directing payment of compensation or expenses of an attorney." (§ 1300, subds. (b), (c), (d), & (e).) Meanwhile, specifically in the trust context, section 1304 applies only to certain categories of "final" orders.

## II.

### SUSPENSION OF TRUSTEE AND TRUST PROTECTOR

We begin with the portion of the order suspending the powers of the trustee and trust protector. Defendants contend the order is appealable because it was made under section 15642, which provides for "removal" of a trustee under certain circumstances.

Suspension of a trustee's powers and removal of a trustee are not the same. Suspension of a trustee's powers is a provisional remedy available to the probate court "[i]f it appears to the court that trust property or the interests of a beneficiary may suffer loss or injury pending a decision on a petition for removal of a trustee and any appellate review . . . ." (§ 15642, subd. (e).) Removal is the final remedy.

Section 1300, subdivision (g) makes appealable any order "[s]urcharging, removing, or discharging a fiduciary."[5] Neither party cites any published authority discussing whether an order suspending a fiduciary falls within this category of orders. The only case that appears to have addressed this issue, *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, concluded in a footnote only that suspension of a trustee's powers is not, of itself, appealable under this subdivision. (*Id.,* at p. 425, fn. 4.) In the absence of any contrary authority, and in keeping with the broader policy of permitting appeals only from final orders, we conclude the Legislature deliberately omitted suspension of a fiduciary's powers from the list of orders made appealable by this subdivision.

It makes no difference that, as defendants protest, the ex parte application was made pursuant to section 15642, which controls "removal" of trustees. As described above, subdivision (e) of that statute also permits suspension of a trustee's powers as a provisional remedy, and the trial court's order is clear—it provides for suspension of defendants' powers, not removal. (§ 15642, subd. (e).)

Defendants also contend the order is appealable under section 1304, subdivision (a), which allows appeals from "[a]ny final order under Chapter 3 (commencing with Section 17200) of Part 5 of Division 9, except

_____

[5] It is unclear whether this section would apply even to an order removing defendant Stanley Hartford as trust protector. The statute applies only to orders removing "a fiduciary." Section 39, however, states: "'Fiduciary' means personal representative, trustee, guardian, conservator, attorney-in-fact under a power of attorney, custodian under the California Uniform Transfer to Minors Act (Part 9 (commencing with Section 3900) of Division 4), or other legal representative subject to this code." No published authority addresses whether a trust protector falls into this category. Fortunately, we need not resolve this question.

[certain exceptions not applicable here]." Defendants point out that section 17200, allows probate courts to enter orders (in trust cases) "[d]etermining the existence or nonexistence of any immunity, power, privilege, duty, or right," "[s]ettling the accounts and passing upon the acts of the trustee, including the exercise of discretionary powers," "[a]ppointing or removing a trustee," "[c]ompelling redress of a breach of the trust by any available remedy," or "[a]pproving or directing the modification or termination of the trust." (*Id.*, subd. (b)(2), (5), (10), (12) and (13).) Defendants argue the order suspending their powers falls into one of these categories and is therefore appealable.

Again, setting aside whether an order suspending the powers of a trustee or trust protector could be shoehorned into one of these categories, and in the absence of any prior authority on point, we conclude section 1304's reference to "final" orders incorporates the concept of finality commonly applied to appealability questions in other civil cases, and defeats defendants' argument. Suspension of a trustee's powers is a provisional remedy, not a final one. Accordingly, the trial court's order suspending defendants' powers was not a "final" order under section 1304.

Having thus concluded that neither section 1300 nor section 1304 provides a basis for appealability, we hold that orders suspending a trustee or trust protector's powers under section 15642, subdivision (e) are not appealable.

### III.

#### APPOINTMENT OF INTERIM TRUSTEE

Defendants next argue the portion of the order appointing an interim trustee is appealable. Defendants cite section 1300, subdivision (c), which authorizes appeals from any order "[a]uthorizing . . . a fiduciary," and

8

argue that the trial court "authorized" the interim trustee by appointing her. We reject this argument. Section 1300, subdivision (c) includes orders "[a]uthorizing, instructing, or directing a fiduciary, or approving or confirming the acts of a fiduciary." In order for this provision to be applicable, the order must logically be directed at someone who is *already* a fiduciary. We also find instructive the contrast with section 17200, which sets out appointment of a trustee as a separate category of order from orders "instructing" or "granting powers to" a trustee. (*Id.*, subd. (b)(6) & (8).) Section 1300's omission of orders appointing a fiduciary does not strike us as accidental.

Section 1304 is also of no help to defendants. The trial court's order was made pursuant to section 15642, which authorizes appointment of a "temporary trustee" in the same subdivision as it authorizes suspension of a trustee's powers. Plainly, this is another provisional remedy, not a "final" order.

Accordingly, we conclude orders appointing a temporary or interim trustee under section 15642, subdivision (e) are not appealable.

IV.

IMPOSITION OF BOND REQUIREMENT ON INTERIM TRUSTEE AND PROHIBITION ON INTERIM TRUSTEE USING TRUST ASSETS FOR COMPENSATION WITHOUT PRIOR COURT AUTHORIZATION

The parties' briefing on plaintiff's motion to dismiss does not discuss the portions of the order imposing a bond on the interim trustee and forbidding the interim trustee from using trust assets for compensation without prior court authorization. We conclude defendants lack standing to appeal from these portions of the order.

9

Appeals can only be taken by parties who are "aggrieved" by the trial court's order. (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.) A party is "aggrieved" only if his or her "rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

Hartford, the trust protector, is not a beneficiary of the trust. His rights and interests are unaffected by the court imposing restrictions on the temporary trustee, whether in the form of imposition of a bond or a prohibition on the use of trust funds for compensation. He therefore lacks standing to appeal.

Fleshman, the trustee, presents a more challenging case, but only slightly. She holds a contingent beneficial interest in the trust, as a remainder beneficiary. Thus, in theory, the imposition of a bond affects her interests in that the cost of the bond may eventually be paid from trust proceeds, reducing her beneficial share. However, we conclude that this injury to defendant Fleshman's interests is too "nominal or remote" to support standing to appeal. The order does not set the amount of the bond, leaving that issue for a future hearing (and a future order). The court also has not yet expressly authorized the interim trustee to use trust funds to pay for the bond or approved an accounting wherein the interim trustee lists the cost of the bond as a trust expense and seeks reimbursement. In the absence of these orders, any injury to defendant Fleshman's interests arising from the cost of the bond is speculative and insubstantial. As for the prohibition on the use of trust funds for interim trustee compensation without prior court approval, Fleshman only benefits from this portion of the order, as it preserves trust funds for her recovery and costs her (and the trust) nothing. Therefore, she is not aggrieved and lacks standing to appeal.

10

## V.

### SETTING OF A REVIEW HEARING

The parties' briefing also does not discuss the portion of the order setting a review hearing. Nothing in Sections 1300 or 1304 appears to authorize an appeal from such an order. Nor does anything in the Code of Civil Procedure or caselaw authorize an appeal from a routine scheduling order of this type. We conclude this portion of the order is not appealable.

## VI.

### DEFENDANTS' REMAINING ARGUMENTS

In opposition to plaintiff's motion to dismiss, defendants raise several other arguments. First, defendants argue we should deny the motion to dismiss even if the underlying order is not appealable because the record is not yet final. While it is certainly true that we "will ordinarily deny a motion to dismiss if dismissal requires an examination of the record or a consideration of the merits of the appeal" (9 Witkin, Cal. Procedure (6th ed. 2024) Appeal, § 770), we need not wait where, as here, the order is nonappealable on its face.

Next, defendants argue we should entertain their appeal even if the underlying order is not appealable because defendants allege their due process rights were violated in the underlying proceeding. We lack jurisdiction to consider an appeal from a nonappealable order, regardless of any alleged due process violations in the underlying proceeding.[6]

Last, defendants argue we should exercise our discretion to treat their appeal as a petition for a writ of mandate. Defendants fail to identify

---

[6] Relatedly, we deny defendants' request that we take judicial notice of the trial court's ruling on defendants' demurrer and motion to strike addressing plaintiff's underlying petition.

11

any irreparable harm they have suffered or will suffer as a result of this order. Accordingly, we decline to treat their appeal as a writ petition.

## VII.

### MOTION FOR SANCTIONS

While her motion to dismiss was pending, plaintiff moved for sanctions against defendants and their attorney, arguing this appeal is frivolous and has been brought solely as a delay tactic. We decline to impose sanctions. As we explain above, though this type of order is standard in trust proceedings, its appealability under California law was murky. Plaintiff admits in her own motion to dismiss that "authority on [the question of appealability of order suspending trustees] is limited." In the absence of a clear rule, we cannot conclude defendants' decision to appeal and oppose plaintiff's motion to dismiss was objectively frivolous. Nor can we conclude defendants brought this appeal for the sole purpose of delay; had defendants elected not to appeal, they would have done so at the risk of waiving whatever appellate rights they might have had.

However, we are troubled by the tenor of defendants' attorney's correspondence with plaintiff's attorney, which plaintiff has provided in connection with her motion for sanctions. The third of the four letters is particularly problematic. Defendants' counsel Michael Leight wrote, "I am not sure why you think you are the civility police, but I want you to stop wasting my time complaining that I have hurt your feelings. [¶] If you would like 'to go on record,' you should 'go on record' some place else because I am not interested in your opinions about whether I am respectful or disrespectful. [¶] I will communicate with you in exactly the manner that I believe is appropriate, whether the communication is in a courtroom or

12

otherwise." Plaintiff's filing does not give us the full context of these comments, but we struggle to conceive of a possible justification for them.

Our concern is compounded by two recent unpublished appellate opinions that plaintiff brings to our attention by a request for judicial notice.[7] In the first case, defendants' counsel was found to have filed a frivolous appeal in bad faith for the purpose of delay and was sanctioned. (*In re Marriage of Haghighat* (Apr. 17, 2019, G054993).) In the second, defendants' counsel was sanctioned for engaging in "'obstreperous conduct which frustrated the policy of the law in favor of settlement, and caused the costs of the litigation to greatly increase,'" and the Court of Appeal criticized him for filing "excessive" evidentiary objections in "opposing a fairly routine family law request for order," characterizing them as "an unnecessary attempt to burden the court and opposing counsel." (*In re Marriage of Grewal* (Oct. 18, 2023, H050225).)

Over recent years, our court has been forced to address incivility of counsel repeatedly. (See, e.g., *Masimo Corp. v. The Vanderpool Law Firm, Inc.* (2024) 101 Cal.App.5th 902, 910; *Lasalle v. Vogel* (2019) 36 Cal.App.5th 127; *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 293.) In those cases, we have explained that civility is a professional requirement of the practice of law, not a mere matter of good manners. Our sister Courts of appeal have done so as well on several occasions. (See, e.g., *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 747–748; *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1534–1537.) The California State Bar has also amended the attorney oath to require all counsel to act with "dignity, courtesy, and integrity." (*Lasalle*, at p. 134.)

---

[7] Which we grant.

13

Defendants' counsel's letter appears to reflect a disturbing lack of interest in these principles, particularly in his belittling comments about the "civility police" and "hurt . . . feelings." In combination with the two cases discussed above, it paints an unfortunate picture of defendants' counsel's approach to the practice of law, and transformed what otherwise would have been a straightforward denial of a sanctions motion, fit only for a footnote, into a close call consuming pages of this opinion. In other words, this letter served only to imperil counsel's interests and those of his clients, rather than advancing them. This time, we decline to impose sanctions.

DISPOSITION

The appeal is dismissed.

Plaintiff shall recover her costs on appeal.

DELANEY, J.

WE CONCUR:

GOETHALS, ACTING P. J.

MOTOIKE, J.