Filed 11/15/22; Unmodified opinion and prior 10/31/22 modification order attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHAPELL SOCAL RENTAL PROPERTIES, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHICO'S FAS, INC., <br><br> Defendant and Appellant. | G060411 <br><br> (Super. Ct. No. 30-2020-01171096) <br><br> O R D E R |

It is ORDERED that the opinion filed on October 17, 2022, be modified as follows:

On page 15, in the first full paragraph, beginning with the words, "We start with the unpleasant," delete the second and third sentences and citation.

On page 17, in the first full paragraph, beginning with the words "As troubling as the ethical and statutory," delete the third and fourth sentences and insert in their place:

Instead, Shapell argues *LaSalle* is "procedurally, factually, and legally distinguishable" without acknowledging that an attorney has both an ethical and a statutory obligation to warn opposing counsel of an impending default.

On page 18, in the second full paragraph, beginning with the words "CIF's argument was not specious," delete the words "It is the law."

On page 18, footnote 3, line 8, replace the words "should have taken" with "at least should have considered taking."

At the end of the second paragraph on page 18, after the sentence "Counsel breached that duty," add the following paragraph:

In a petition for rehearing, Shapell argues for the first time that section 583.130 governs only civil actions and does not apply to unlawful detainer actions, which are special proceedings governed by a different part of the Code of Civil Procedure. Shapell did not make this argument in its respondent's brief, at oral argument, or, as far as we can tell from the record, before the trial court. Arguments cannot be raised for the first time in a petition for rehearing. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092; *Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1308.) The argument is forfeited. We note, nonetheless, the obligation, confirmed in *LaSalle,* to warn opposing counsel of an impending default is an ethical obligation, independently grounded on case law, that is reinforced by a statutory obligation imposed by section 583.130. (See *LaSalle, supra*, 36 Cal.App.5th at p. 137.) That obligation arises only if opposing counsel's identity is known, which was the situation in *LaSalle* and the present case. In addition, section 583.120, subdivision (b) grants a court authority to apply section 583.130 to special proceedings unless doing so would be "inconsistent with the character of the special proceeding or the statute governing the special proceeding." (§ 583.120, subd. (b).) Section 583.130 expresses the state policy that all attorneys cooperate in bringing an action to trial. It seems to us that applying that policy to unlawful detainer proceedings would not be inconsistent with the character of the unlawful detainer proceedings or with the statutes governing such proceedings.

On page 19, the first sentence in the second full paragraph beginning with "The first factor" is deleted and the following sentence is inserted in its place:

The first factor is the means by which Shapell obtained the default judgment.

On page 19, third full paragraph, line 4 and 5, replace the words "From the undisputed evidence presented in the case" with "From the record presented to us."

On page 21, delete the first full sentence commencing at the top of the page, beginning with "In other words," and insert in its place:

The appellate record establishes that Shapell's counsel committed an ethical and statutory violation and engaged in litigation tactics designed to increase the possibility of CFI's default.

Respondent's motion to take additional evidence and petition for rehearing are DENIED.

The modification does not change the judgment.


SANCHEZ, J.

WE CONCUR:


GOETHALS, ACTING P. J.


MOTOIKE, J.


3

Filed 10/31/22 (unmodified opin. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHAPELL SOCAL RENTAL PROPERTIES, LLC,<br><br>    Plaintiff and Respondent,<br><br>              v.<br><br>CHICO'S FAS, INC.,<br><br>    Defendant and Appellant. | G060411<br><br>(Super. Ct. No. 30-2020-01171096)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on October 17, 2022, be modified as follows:

On page 20, fifth line of the first paragraph, replace "CFI" with "Shapell" so that the sentence reads as follows:

CFI investigated the matter and, upon learning the Complaint had been served on a store employee, directed Foley & Mansfield to immediately contact Shapell to discuss resolving the dispute.

There is no change in the judgment.

                                                                SANCHEZ, J.

WE CONCUR:


GOETHALS, ACTING P. J.


MOTOIKE, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHAPELL SOCAL RENTAL PROPERTIES, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHICO'S FAS, INC., <br><br> Defendant and Appellant. | G060411 <br><br> (Super. Ct. No. 30-2020-01171096) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge. Reversed and remanded. Motion to dismiss appeal. Denied. Request for Judicial Notice. Denied.

Foley & Mansfield, Margaret I. Johnson and Angela V. Sayre for Defendant and Appellant.

Klapach & Klapach, Joseph S. Klapach; Hamburg Karic Edwards & Martin, Gregg A. Martin and Ann S. Lee for Plaintiff and Respondent.

\* \* \*

## INTRODUCTION

An attorney has both an ethical and statutory obligation to warn opposing counsel, if counsel's identity is known, of an intent to seek a default and to give counsel a reasonable opportunity to file a responsive pleading. In *LaSalle v. Vogel* (2019) 36 Cal.App.5th 127, 137 (*LaSalle*), a panel of this court confirmed that obligation directly, unequivocally, and without qualification. The *LaSalle* court concluded the ethical obligation is rooted in decades of case authority and, the *LaSalle* court concluded, is reinforced by a statutory obligation arising under Code of Civil Procedure section 583.130.[1] (*LaSalle, supra*, at pp. 135-137.) The *LaSalle* court urged a return to the professionalism represented by section 583.130 and expressed the hope that before seeking a default counsel would act with "'dignity, courtesy, and integrity.'" (*LaSalle*, at p. 141.)

This case demonstrates the unfortunate reality that some members of the legal profession have not demonstrated the yearned-for professionalism and that the hopes expressed in *LaSalle* remain a dream. In this unlawful detainer action, counsel for plaintiff Shapell Socal Rental Properties, LLC (Shapell) requested and obtained a default and default judgment against defendant Chico's FAS, Inc. (CFI) in direct violation of the ethical and statutory obligations confirmed in *LaSalle*. In the course of the underlying lease dispute, CFI had asked Shapell to direct communications regarding the subject lease to CFI's counsel. Despite that request, and despite *LaSalle* — which was on the books at the time — Shapell's counsel never communicated with CFI's counsel about an intent to seek a default and default judgment before requesting one from the trial court. Shapell's

---

[1] Code of Civil Procedure section 583.130 states: "It is the policy of the state that a plaintiff shall proceed with reasonable diligence in the prosecution of an action but that all parties shall cooperate in bringing the action to trial or other disposition."

All statutory references are to the Code of Civil Procedure unless otherwise stated.

counsel not only failed to notify CFI's counsel of the complaint, counsel also as we shall explain, effected service of the complaint and the request for entry of default and default judgment in a way intentionally and precisely calculated to create a strong possibility of a default.

CFI brought a motion under sections 473, subdivision (b) (section 473(b)) and 473.5 to set aside the default and default judgment. In that motion, CFI called out Shapell on its counsel's ethical and statutory violation. Shapell's response was to call CFI's argument "specious" — a nose-thumbing at *LaSalle*.

The trial court inexplicably denied CFI's motion and failed to address the breach of ethical and statutory duties by Shapell's counsel. We cannot abide that result. Several factors applicable to motions for relief from default, along with counsel's breach of ethics and of section 583.130, support our decision to reverse the order denying CFI's motion to set aside the default and default judgment.

FACTS AND PROCEDURAL HISTORY

I.

FACTS

CFI is a national chain of retail stores that sells women's clothing. Shapell owns and manages commercial real estate.

In May 2015 Shapell and CFI entered into a lease for property in Laguna Niguel, California for use as a retail store (the Lease). Two provisions of the Lease are of particular importance here:

1. Section 32.E, entitled "NOTICES," states: "Any notice or demand required or permitted by law or by any of the provisions of this Lease shall be in writing. All notices or demands by Landlord to Tenant shall be deemed to have been properly given when sent by registered or certified mail, postage prepaid, or via overnight delivery service, addressed to Tenant at the address set forth in the Fundamental Lease Provisions.

3

All notices or demands by Tenant to Landlord shall be deemed to have been properly given when sent by registered or certified mail, postage prepaid or overnight delivery service, addressed to Landlord at the address set forth in the Fundamental Lease Provisions. Either party hereto may change the place to which notices are to be given by advising the other party in writing. If any notice or other document is sent by mail or overnight delivery service as aforesaid, the same shall be deemed served, delivered, and received when such notice is received or delivery is refused by the recipient party."

2. Section 3.E granted CFI a one-time right to unilaterally terminate the Lease following the fifth full year of the Lease term if store revenues did not exceed a minimum annual sales expectation of $1.5 million. Section 3(E) states in part, "The Lease shall automatically terminate at 11:59 p.m. on the sixtieth (60th) day following delivery of written notice of termination to Landlord." The Lease refers to this right to terminate the Lease as the "kick-out right."

CFI made no rent payments for April, May, and June 2020. In May 2020, CFI's chief operating officer hosted a conference call for its landlords and announced CFI's intent to withhold rents or pay reduced rents and expressed the hope that its landlords would accept reduced payments. From July through December 2020 CFI paid Shapell half of the monthly rent due under the Lease. Beginning in January 2021, CFI resumed paying the full amount but did not make up the prior shortfalls.

By letter dated August 17, 2020, Shapell provided CFI formal notice that it was in default of the Lease due to failure to pay rent. The Letter was sent to CFI's corporate office in Fort Myers, Florida. In a letter to Shapell dated August 24, 2020, CFI asserted it was not in default or breach of the Lease.

In October 2020, Shapell served CFI with a formal 10-day notice to pay rent or quit (the 10-day notice). The notice advised CFI it was in default of the Lease for failure to pay rent, property taxes, insurance, and common area maintenance payments in

4

the total amount of $51,335.42. The 10-day notice was served on CFI by overnight mail sent to its corporate office in Fort Myers, Florida.

In response to the 10-day notice, CFI's legal counsel (Foley & Mansfield) sent a letter to Shapell dated October 22, 2020. The letter advises Shapell that CFI had retained Foley & Mansfield "for all real estate disputes and affirmative claims arising out of the effects of COVID-19 in the retail sector." The letter requests Shapell to "direct . . . communications to [Foley & Mansfield] via email concerning [CFI] or its brands or concerning your lease(s) for any such store(s)."

In November 2020, Shapell filed a summons and unlawful detainer complaint against CFI (the Complaint). Shapell's counsel did not communicate with CFI's counsel about the Complaint or accepting service of it. Instead, on November 20, 2020, at 5:05 p.m., a registered process server appeared at the CFI's store in Laguna Niguel and personally served the Complaint on a store employee named "Terra J."

On November 23, 2020, copies of the Complaint were sent by first class mail to CFI at the Laguna Niguel store. Shapell's counsel did not have the summons and the Complaint served on CFI's registered agent for service of process in California and did not have copies of the summons and Complaint mailed to CFI's counsel or corporate offices.

On December 11, 2020, Shapell filed a request for entry of default and default judgment against CFI. The request for entry of default was mailed to the Laguna Niguel store address. A judgment by default was entered on December 22, 2020. Shapell's counsel did not warn or in any way notify CFI's counsel of an intent to request entry of default and default judgment.

By letter dated February 17, 2021, CFI gave notice of its intent to terminate the Lease pursuant to the section 3.E of the Lease. The letter stated, "Such termination shall be effective 60 days following Landlord's receipt of Tenant's notice." CFI gave a second notice of intent to terminate the Lease by letter dated April 13, 2021, which also

5

stated, "Such termination shall be effective 60 days following Landlord's receipt of Tenant's notice . . . ." The letter added, "to preserve Tenant's termination rights set forth in Section 3 E of the Lease, we are giving notice to terminate."

## II.

## CFI'S MOTION TO SET ASIDE THE DEFAULT AND
## DEFAULT JUDGMENT

In March 2021, CFI filed a motion pursuant to section 473.5 to set aside the default and in the alternative to set aside the default and default judgment pursuant to section 473(b). CFI argued service of the Complaint did not result in actual notice because (1) service did not comply with the agreed terms of the Lease, which required service on CFI at its corporate office in Florida, and (2) service was not made on CFI's registered agent for service of process in California. CFI also argued its failure to answer the Complaint was due to inadvertence, surprise, mistake, or excusable neglect in that the Complaint was served on "an ordinary store associate," who made an honest mistake by not forwarding the Complaint to CFI's corporate office, and neither Shapell nor its legal counsel contacted Foley & Mansfield to notify it of the complaint or of an intent to seek a default judgment.

In support if its motion, CFI submitted the declaration of its counsel of record, Angela V. Sayre, and its senior director of real estate legal, David T. Graham. Sayre declared, "Neither[] I nor anyone from Foley & Mansfield ever received any communication from Plaintiff Shapell or its counsel at Hamburg, Karic[,] Edwards & Martin LLP advising that a Complaint had been filed or served." Graham declared: "On December 30, 2020, [CFI] received an unsolicited email from Ilmar Kalviste of Shapell Socal Rental Properties, LLC, stating Plaintiff had already obtained a judgment against [CFI]. At the time of the email, no one in [CFI]'s legal department and to the best of my knowledge, no one in [CFI]'s corporate headquarters had any knowledge of the existence of the Complaint or that it had been filed or served." Graham added: "After further

6

investigation, and to my surprise, I found that an Aliso Village store employee had received a copy of the Complaint on November 20. The Complaint had not been directed to the attention of [CFI]'s legal department."

In its opposition to the motion, Shapell argued that CFI knew it was in default of the Lease and that the Complaint had been served in accordance with the Code of Civil Procedure. Shapell argued its counsel had no obligation to notify CFI's counsel about the Complaint or an intent to seek a default judgment.

After hearing from both sides at the hearing on the motion, the trial court stated, "I'm getting a very uncomfortable position about this tenant [CFI] playing pretty fast and loose with whether they pay rent or not, or whether they want to be there or not." The court took the matter under submission and several days later issued a minute order stating: "The cause was briefed, argued, and taken under submission on 04/23/2021. The court, having now reviewed the moving papers and evidence attached thereto, rules as follows: Denied."

In June 2021, CFI filed a notice of appeal from the order denying its motion to set aside the default and default judgment.[2] On the same day, CFI filed a petition for a writ of mandate directing the trial court to vacate its order denying CFI's motion. CFI requested a stay of further trial court proceedings. We requested preliminary opposition from Shapell and issued an order staying proceedings in the trial court. In July 2021, we denied CFI's writ petition and dissolved a previously-issued stay order.

---

[2] An order granting or denying a statutory motion to vacate or set aside a default and default judgment is appealable under section 904.1, subdivision (a)(2) as an order made after final judgment. (*County of Stanislaus v. Johnson* (1996) 43 Cal.App.4th 832, 834.)

7

## III.

## RELINQUISHMENT OF POSSESSION

On May 14, 2021, the trial court denied CFI's motion for stay of execution of judgment for possession. The Orange County Sheriff's Department arrived at the leased premises on June 8, 2021, to evict CFI. On the same day, CFI's counsel asked Shapell to "call off the Sheriff to allow [CFI] to peacefully remove its property from the space." CFI notified Shapell through its counsel that CFI would vacate the leased premises, remove all of its personal property, and return the premises to Shapell no later than June 9.

## REQUEST FOR JUDICIAL NOTICE

After the briefing in this matter was completed, CFI filed a request for judicial notice of papers and evidence filed in support of, and in opposition to, an application for a right to attach order and issuance of a writ of attachment brought by Shapell in a related Los Angeles Superior Court case. CFI contends those documents are relevant to show that CFI's appeal is not moot and Shapell's motion to dismiss the appeal as moot should be denied. We deny the request for judicial notice.

By way of background, we note the unlawful detainer action only adjudicated right to possession. Shapell filed a separate lawsuit for damages in the Los Angeles Superior Court for breach of contract based on alleged breaches of the lease that is the subject of the unlawful detainer action. In that breach of contract action, Shapell filed an application for a right to attach order and issuance of a writ of attachment for $682,516.06 to cover estimated attorney fees and costs.

CFI's request for judicial notice is directed to Shapell's application and CFI's opposition papers. Those documents have been submitted to us as two volumes of exhibits that total 943 pages in length. As court records, those exhibits are subject to judicial notice under Evidence Code section 452, subdivision (d); however, none of the exhibits bears a file stamp or any other indicia of being an official court record. The

8

request for judicial notice could be denied for that reason alone. "'[W]hen a party desires the appellate court to take judicial notice of a document or record on file in the court below the parties should furnish the appellate court with a copy of such document or record certified by its custodian.'" (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 743; see *Wolf v. CDS Devco* (2010) 185 Cal.App.4th 903, 914 ["such a court record would normally show a conformed file stamp or other evidence of reliability"].)

CFI argues the exhibits to its request for judicial notice show the unlawful detainer action is not moot but remains a live controversy. Shapell opposes the request for judicial notice on the grounds (1) there is no longer any dispute over the right to possession and (2) Shapell's Los Angeles Superior Court case and application for right to attach order have nothing to do with the right to possession of the leased premises.

We agree with Shapell that its Los Angeles Superior Court case and application for right to attach order are unrelated to the issue of whether CFI's appeal is moot. The question in deciding mootness is whether the appellate court can grant effective relief. (*Wilson & Wilson v. City Counsel of Redwood City* (2011) 191 Cal.App.4th 1559, 1574.) Right to possession is distinct from damages for breach of lease. Our ability to grant effective relief in this appeal is not related to or dependent upon Shapell's separate lawsuit suit for damages because an unlawful detainer action only adjudicates right to possession. Further, as we shall explain, CFI's appeal is not moot, and the documents that are the subject of CFI's request for judicial notice are unnecessary to reach that decision.

MOTION TO DISMISS THE APPEAL AS MOOT

Shapell seeks dismissal of the appeal on the ground it is impossible to grant CFI any effective relief because the issue of possession is no longer subject to dispute. Shapell argues that even if CFI were to prevail on appeal, it cannot regain possession of

9

the leased premises because (1) Shapell has regained possession of the premises and relet them to a new tenant and (2) CFI twice exercised its right to terminate the Lease pursuant to the kick-out provision. We deny the motion.

A case is moot and will be dismissed when the appellate court cannot grant the appellant any effective relief. (*Wilson & Wilson v. City Counsel of Redwood City*, *supra*, 191 Cal.App.4th at p. 1574.) This appeal is not moot because, in the event of reversal, section 908 grants us authority to order restitution: "When the judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order. In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with rights of third parties and may direct the entry of a money judgment sufficient to compensate for property or rights not restored." (§ 908; see *Beach Break Equities, LLC v. Lowell* (2016) 6 Cal.App.5th 847, 853-854 [section 908 authorizes reviewing court to order restitution after reversal of unlawful detainer judgment].) "'A person whose property has been taken under a judgment "is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable."'" (*Gunderson v. Wall* (2011) 196 Cal.App.4th 1060, 1064.)

Restitution under section 908 may include restoring an evicted tenant to possession of the leased premises. In *Old National Financial Services, Inc. v. Seibert* (1987) 194 Cal.App.3d 460, a tenant appealed from an unlawful detainer judgment in favor of the landlord but did not obtain stay of judgment pending appeal. (*Id*. at pp. 464-465.) In response to the unlawful detainer judgment, the tenant vacated the premises, either voluntarily or pursuant to a writ of execution. (*Id*. at p. 468.) The Court of Appeal concluded the appeal was not moot because upon reversal of the unlawful detainer judgment, the court could restore the tenant to possession of the property: "[Tenant] was

10

compelled to give up possession pursuant to the judgment. The fact that he may have given up possession before he was formally evicted pursuant to the writ of execution does not make this appeal moot. Effective relief was available to [Tenant] if he had prevailed on appeal. Upon reversal of the judgment, this court would have been empowered to restore him to possession of the property." (*Ibid.*)

Shapell cites *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648 (*Munoz*) for the proposition that "[CFI] cannot recover possession of the leased premises even if the judgment were ultimately reversed on appeal." *Munoz* does not support that proposition. The issue in *Munoz* was whether a tenant may bring a breach of contract action based on the tenant's eviction when the eviction was effected by a writ of possession following judgment for the landlord in an unlawful detainer action, but the judgment is reversed. (*Id.* at p. 653) In resolving this issue, the Court of Appeal first addressed whether such a tenant may recover under any theory for losses caused by enforcement of an ultimately reversed judgment. (*Id.* at p. 657.) The court explained that section 908 gives the reviewing court authority to order restitution, which can be recovered in the underlying unlawful detainer action. (*Munoz*, at p. 657.)

To make the point that restitution might be a prevailing tenant's only recovery, the *Munoz* court stated: "'A few old . . . cases actually restored possession to ousted tenants prevailing on appeal (although the circumstances were unusual, involving enforcement of war time laws against Japanese tenants). [Citation.] *But in most [unlawful detainer cases], appellate courts are not apt to invoke [section] 908 to reinstate a tenant's right to possession after years have gone by . . . especially if the landlord has already leased (or perhaps sold) the property to a third party . . . .* [¶] Thus, for all practical purposes, the only appropriate remedy for vacating tenants who prevail on appeal, but who failed to obtain a stay, may be a *monetary award* "sufficient to compensate [the tenant] for the property rights not restored" . . . .'" (*Munoz, supra*, 195

11

Cal.App.4th at p. 658 (some italics added); Friedman et al., Cal. Practice Guide: Landlord-Tenant [(The Rutter Group 2021)] ¶ 9:470.1.)

The Rutter Group treatise, and hence *Munoz*, do not stand for the proposition that possession can never be restored to an ousted tenant who succeeds in obtaining a reversal of an unlawful detainer judgment. Rather, the Rutter Group treatise and *Munoz* support the premise that although section 908 grants an appellate court the power to reinstate the tenant's right to possession, *it is not likely* a court will do so particularly if years have gone by and the property has been leased to another party. Not likely is not the same as never.

In addition to restitution under section 908, CFI may seek a monetary restitution award from the trial court in the event of reversal. (*Beach Break Equities, LLC v. Lowell, supra*, 6 Cal.App.5th at p. 854.) "[E]ven without an order from the reviewing court, the party prevailing on appeal may seek restitutionary relief through a motion in the remanded matter, rather than by filing a new cross-complaint or filing an independent action." (*Ibid*.)

Shapell argues CFI cannot regain possession or restitution in the event of a reversal because CFI voluntarily relinquished possession of the leased premises on June 9, 2021. CFI relinquished possession when the deputy sheriffs showed up at the store to evict it. CFI asked Shapell to "call off the Sheriff" so that it could peacefully remove its property. CFI was compelled by the unlawful detainer judgment to give up possession and therefore did not waive the ability to regain possession if the judgment were reversed. (See *Old National Financial Services, Inc. v. Seibert, supra*, 194 Cal.App.3d at p. 468.)

Shapell argues that CFI voluntarily terminated the Lease by twice exercising its right under the kick out provision. The first time was by letter dated February 17, 2021, and the second time was by letter dated April 13, 2021. The notices of intent to terminate the Lease do not render the appeal moot. If the unlawful detainer

12

judgment is reversed, then the issue would arise whether the termination notices were valid and effective. Shapell asserts neither notice is valid because both were served at a time when CFI was in default of the Lease and the Lease had been terminated for Chico's failure to pay rent. We are not in the position to resolve such factual disputes.

Reversal, however, could provide CFI effective relief by giving it the opportunity to terminate the Lease under more favorable terms and conditions offered by voluntary termination. If the notices were valid and effective to terminate the Lease, the legal obligations of the parties, and CFI's exposure to damages, would be different than if the Lease were terminated by Shapell. In other words, the consequences of unilateral Lease termination by CFI would be different from the consequences of Lease termination by virtue of CFI being in default of the Lease.

## DISCUSSION

### I.

### APPLICABLE LAW AND STANDARD OF REVIEW

Section 473(b) authorizes the court to set aside a default judgment upon a showing that the default resulted from mistake, inadvertence, surprise, or excusable neglect. (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42.) The motion for relief must be made within six months after entry of the default, and the party moving to set aside the default has the burden of showing good cause for relief. (*Id.* at p. 49.)

Section 473.5 authorizes the court to set aside a default or default judgment "[w]hen service of a summons has not resulted in actual notice to a party in time to defend the action . . . ." (*Id.*, subd. (a).) A defendant seeking to set aside a default or default judgment under section 473.5 must show, by affidavit, that his or her lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect. (*Id.*, subd. (b).)

13

We review an order granting or denying relief under section 473(b) or section 473.5 under the abuse of discretion standard.  (*Rios v. Singh* (2021) 65 Cal.App.5th 871, 885 [§ 473.5]; *McClain v. Kissler* (2019) 39 Cal.App.5th 399, 413 [§ 473(b)].)  "However, the trial court's discretion is not unlimited and must be "'exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice."''"  (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233, superseded by statute as stated in *Tackett v. City of Huntington Beach* (1994) 22 Cal.App.4th 60.)  "'"[T]he provisions of section 473 . . . are to be liberally construed and sound policy favors the determination of actions on their merits." [Citation.]' [Citation.]  '[B]ecause the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default.'"  (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 371-372.)  An order denying relief is therefore scrutinized more carefully than an order granting relief and permitting trial on the merits.  (*Elston*, at p.  233.)

The test for abuse of discretion is traditionally recited as whether the trial court's decision exceeded the bounds of reason.  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)  In more practical terms, the abuse of discretion standard measures whether, in light of the evidence, the lower court's decision falls within the permissible range of options set by the legal criteria.  (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.)  The scope of the court's discretion is limited by law governing the subject of the action taken.  (*Ibid*.)  An action that transgresses the bounds of the applicable legal principles is deemed an abuse of discretion.  (*Ibid*.)  A trial court's decision is an abuse of discretion if it is based on an error of law (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 629) or if the court's factual findings are not supported by substantial evidence (*Millview County Water Dist. v. State Water Resources Control Bd.* (2016) 4 Cal.App.5th 759, 769).

14

## II.

## THE TRIAL COURT ABUSED ITS DISCRETION BY
## DENYING CFI'S MOTION TO SET ASIDE THE
## DEFAULT AND DEFAULT JUDGMENT

A. *Shapell's Counsel Breached Its Ethical and Statutory Obligations to Notify CFI of Shapell's Intent to Request Entry of Default and Default Judgment*

We start with the unpleasant but necessary task of concluding that Shapell's trial counsel breached its ethical and statutory obligation to advise CFI's counsel of the intent to seek entry of a default judgment. That obligation was confirmed by a panel of this court in *LaSalle*, *supra*, 36 Cal.App.5th 127 in these direct and unambiguous words: "[I]t is now well acknowledged that an attorney has an ethical obligation to warn opposing counsel that the attorney is about to take an adversary's default." (*Id.* at p. 135.)

The obligation to advise opposing counsel of an impending default is part of an attorney's responsibility to the court and the legal profession and takes precedence over the obligation to represent the client effectively. (*LaSalle, supra,* 36 Cal.App.5th at pp. 134, 137.) That duty, and counsel's responsibility to behave with professional courtesy, existed long before *LaSalle* was issued. (See *id*. at pp. 132-135.) The *LaSalle* court not only reaffirmed counsel's ethical duty to warn opposing counsel of an impending default judgment but concluded that obligation is imposed by statute: "So to the extent it was possible for a party seeking a default with unseemly haste to commit an *ethical* breach without creating a legal issue, that distinction was erased by section 583.130. The ethical obligation to warn opposing counsel of an intent to take a default is now reinforced by a statutory policy that all parties 'cooperate in bringing the action to trial or other disposition.' [Citation.] Quiet speed and unreasonable deadlines do not qualify as 'cooperation' and cannot be accepted by the courts." (*Id.* at p. 137.) Attorneys

15

who do not comply with that obligation are "practicing in contravention of the policy of the state and menacing the future of the profession." (*Id*. at p. 141.)

When Shapell had the Complaint served and when it sought to have a default and default judgment entered, it knew CFI was represented by counsel. By letter dated October 22, 2020, CFI's attorney, Angela V. Sayre, notified Shapell that the law firm of Foley & Mansfield represented CFI and requested Shapell to direct any communications regarding the Lease to that firm. The Complaint was filed and served in November 2020. Shapell's trial counsel did not communicate with Ms. Sayre, any other attorney at Foley & Mansfield, or anybody representing CFI, about the Complaint or service of it. On December 11, 2020, Shapell's counsel filed a request for entry of default and default judgment. Shapell's counsel did not communicate with Ms. Sayre, any other attorney at Foley & Mansfield, or anybody representing CFI, about the intent to file the request for entry of default and default judgment.

Neither Shapell nor its counsel deny knowing who was representing CFI when the Complaint and request for entry of default and default judgment were filed. Neither Shapell nor its counsel deny failing to warn CFI's counsel that Shapell intended to request a default judgment. In opposing the motion to set aside the default judgment, Shapell submitted a declaration from its counsel, Gregg A. Martin, and he said nothing about having communicated with CFI's counsel or anybody representing CFI before the request for entry of default and default judgment was filed, or at any time.

In addition, Shapell's counsel did not have the Complaint or the request for entry of default and default judgment served on or mailed to CFI's registered agent for service of process in California, CFI's corporate headquarters, or the address given in the Lease for service of notices to CFI. It would have been easy enough for Shapell's counsel to do so. As members of a profession and officers of the court, counsel had the responsibility to treat opposing counsel with "'dignity, courtesy, and integrity.'"

16

(*LaSalle, supra*, 36 Cal.App.5th at p. 134.) Here, "[d]ignity, courtesy, and integrity were conspicuously lacking." (*Ibid.*)

As troubling as the ethical and statutory violations are, the refusal by Shapell and its counsel to acknowledge any duty to notify counsel for CFI before taking its default is even more troubling. In the respondent's brief, Shapell ignores its counsel's breach of ethics altogether. Instead, Shapell argues *LaSalle* is "procedurally, factually, and legally distinguishable" without once acknowledging the black-letter rule that an attorney has both an ethical and a statutory obligation to warn opposing counsel of an impending default. Even at oral argument, counsel for Shapell neither accepted responsibility, nor acknowledged its trial counsel's violation of the ethical and statutory duties confirmed by *LaSalle*.

*LaSalle* is distinguishable from the present case—but not in a way favorable to Shapell. The most important distinction is that the breach of ethics and statutory duty committed by Shapell's counsel was markedly worse than the one condemned in *LaSalle.* In *LaSalle,* the defendant was personally served with the summons and complaint. (*LaSalle, supra*, 36 Cal.App.5th at p. 131 & fn. 4.) After 35 days passed, the plaintiff's counsel notified the defendant by e-mail that a responsive pleading was past due and threatened to request entry of default unless a responsive pleading was filed the next day. (*Ibid.*) When the plaintiff's counsel did not receive a response from the defendant by the deadline, counsel filed a request for entry of default and e-mailed a copy to the defendant. (*Ibid.*) Here, in contrast, service on CFI was made on "an ordinary store associate." Shapell's counsel never warned CFI by e-mail or otherwise that its responsive pleading was past due and never warned CFI by e-mail or otherwise of its intent to seek a default judgment. The defendant in *LaSalle* was "notified by unsatisfactory means of an unreasonably short deadline" (*LaSalle,* at p. 140) but at least received notice of some kind. No such notice was given by Shapell.

17

The only justification or explanation ever offered by Shapell appears in its opposition to CFI's motion to set aside the default and default judgment. There, Shapell asserted: "Throughout its brief, [CFI] complains that Shapell did not attempt to contact its lawyers before the response to the summons and complaint was due [or] before the default was entered, supposedly to warn [CFI] that it was running out of time to respond. Again, this argument is specious and, if adopted, would impose a completely unfair and unnecessary procedural hurdle upon aggrieved parties seeking Court redress."

CFI's argument was not specious: It is the law. Shapell's trial counsel had an ethical and statutory duty to advise CFI's counsel of the intent to seek entry of default and default judgment. (*LaSalle, supra,* 36 Cal.App.5th 135.) Counsel breached that duty.

B. *Factors Leading Us to Conclude the Trial Court Erred*

Counsel's breach of ethics is subject to reproval[3] but does not in itself compel reversal of the order denying CFI's motion to set aside the default and default judgment. In addition to counsel's ethical violation, the *LaSalle* court considered "standards now applicable to such motions" to conclude the trial court had abused its discretion by denying the defendant's motion to set aside the default. (*LaSalle, supra,* 36 Cal.App.5th at p. 137.) The *LaSalle* court stated it was not holding that "every section 473 motion supported by a colorable declaration must be granted." (*Id.* at p. 140.)

---

[3] Canon 3(D)(2) of the California Code of Judicial Ethics states, "Whenever a judge has personal knowledge . . . that a lawyer has . . . violated any provision of the Rules of Professional Conduct, the judge shall take appropriate corrective action." The advisory committee commentary regarding canon 3(D)(2) states that "[a]ppropriate corrective action could include direct communication with the . . . lawyer who has committed the violation, . . . other direct action, . . . or a report of the violation to the . . . appropriate authority. (Cal. Code Jud. Ethics, canon 3(D)(2).) The trial court should have taken such corrective action regarding the breach of ethical and statutory duties by Shapell's counsel. The court did not do so, and, therefore, our disposition will direct the Presiding Judge of the superior court to assign the case to a different judge on remand.

Several factors in combination with counsel's breach of ethics and violation of section 583.130 lead us to conclude the trial court abused its discretion by denying CFI's motion to set aside the default judgment.

The first factor is what is best described as Shapell's use of stealth and deviousness to obtain the default judgment. The evidence established the Complaint was served on an employee at CFI's Laguna Niguel store at a most inconvenient time: after 5:00 p.m. on the Friday the week before the Thanksgiving holiday. Shapell did not effect service on CFI's registered agent for service of process in California or on CFI at its corporate headquarters in Florida. Shapell's counsel did not communicate with CFI's counsel about the Complaint. Shapell mailed copies of the Complaint to the CFI's Laguna Niguel store address, but not to CFI's counsel, registered agent, or corporate headquarters. While the plaintiff's counsel in *LaSalle* warned the defendant of the impending default by e-mail, here, neither Shapell nor its counsel communicated in any manner with anybody representing CFI before seeking entry of default and default judgment.

In the usual case, we must infer the trial court made any and all findings necessary to support an order. (See *Pulte Homes Corp. v. Williams Mechanical, Inc.* (2016) 2 Cal.App.5th 267, 272 [findings implied in support of order denying relief under sections 473(b) and 473.5].) But this is not the usual case. From the undisputed evidence presented in this case, only one reasonable finding can be made: Shapell intentionally served the Complaint, and sought entry of default and default judgment, in a manner precisely calculated to keep CFI in the dark about what was going on and to produce a substantial possibility of a default. The trial court had no discretion to find otherwise.

The second factor is the complete lack of prejudice to Shapell from setting aside the default judgment. (See *LaSalle*, *supra,* 36 Cal.App.5th at pp. 138-139.) Shapell does not even attempt to identify any prejudice it might suffer if the default judgment were set aside.

19

The third factor is the relative speed with which CFI acted once it learned of the default judgment. On December 30, 2020, CFI received an e-mail from Ilmar Kalviste of Shapell advising that Shapell had already obtained a judgment in an unlawful detainer action. CFI investigated the matter and, upon learning the Complaint had been served on a store employee, directed Foley & Mansfield to immediately contact CFI to discuss resolving the dispute. Attorneys from Foley & Mansfield started negotiations with Shapell on January 6, 2021. Graham started negotiating with Shapell in early January 2021. We cannot fault CFI for waiting until negotiations proved to be unsuccessful in order to bring its motion to set aside the default judgment.

Shapell argues the trial court was the sole judge of witness credibility and therefore was entitled to disbelieve the declarations of Sayre and Graham. In the usual case that would have been correct: The trial court determines the credibility of witnesses presenting testimony by declaration. (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 804-805.) But we are not bound by credibility determinations that are arbitrary or unreasonable. (See *People v. Ogunmowo* (2018) 23 Cal.App.5th 69, 79-80 [trial court's credibility determination not entitled to deference where "the conclusion is not supported by the record"]; *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1364, fn. 9 ["we can conceive of no rational basis for the court to reject Cave's testimony and do not feel compelled to disregard it"]; *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204 [court may not arbitrarily reject uncontradicted evidence or do so without a rational basis].)

The record in the present case does not support a finding that Sayre and Graham lacked credibility. Shapell submitted no evidence to counter or contradict any representations made in the Sayre and Graham declarations. There were no conflicts in the declarations for the trial court to resolve. Shapell fails to challenge or contradict representations made by Sayre and Graham that Shapell's counsel never contacted them

20

about the Complaint or advised them of Shapell's intent to request a default judgment. In other words, the evidence established beyond dispute that Shapell's counsel committed an ethical and statutory violation and engaged in underhand litigation tactics calculated virtually to ensure CFI would default. The Sayre and Graham declarations, rather than show that CFI knew of the Complaint and decided to do nothing, demonstrate instead that CFI acted promptly on learning of the default judgment and by early January 2021 was negotiating with Shapell to resolve the dispute. In these circumstances, wholesale rejection of the Sayre and Graham declarations was arbitrary and unreasonable.

It is true, as Shapell argues, that CFI did not submit a declaration from the store employee who was served with the Complaint. In light of the standard of review and the policy favoring trial on the merits, CFI's omission of such a declaration carries little weight in our careful scrutiny of the order denying relief. When the party in default moves promptly for relief, and the party opposing the motion will not suffer prejudice if relief is granted, "'very slight'" evidence is necessary to have a default set aside. (*Elston v. City of Turlock, supra*, 38 Cal.3d at p. 233; see *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 740 [only a "weak showing" is necessary].) CFI has cleared that low bar. Any doubts must be resolved in favor of granting CFI relief. (*Maynard v. Brandon, supra*, 36 Cal.4th at pp. 371-372.)

At the hearing on the motion to set aside the default and default judgment, the trial court made comments suggesting it had considered the two notices of intent to terminate the Lease served by CFI and believed they showed that CFI was "playing pretty fast and loose with whether they pay rent or not, or whether they want to be there or not." The court also stated that CFI appeared to be "just dragging its feet, hoping that this would go away."

The parties use an inordinate amount of space in their appellate briefs to argue back and forth over whether the trial court's comments constitute findings. The short answer is the court's comments are not findings but "may be valuable in illustrating

21

the trial judge's theory . . . ." (*Yarrow v. State of California* (1960) 53 Cal.2d 427, 438.) What the comments illustrate for us is that the trial court's concern over CFI playing "fast and loose" was entirely misdirected. While questioning CFI's integrity, the court completely ignored the ethical and statutory violation committed by Shapell's counsel.

Moreover, if trial court's comments reflected the court's theory, then that theory was unsound. The court's "foot dragging' comment is not supported by the record, which establishes that CFI acted promptly to contact Shapell upon learning, and confirming, a default judgment had been entered. The two notices of intent to terminate the Lease have nothing to do with the issues of whether CFI received actual notice of the unlawful detainer lawsuit and whether its failure to respond was the result of mistake, inadvertence, surprise, or excusable neglect. CFI claims it served the notices only to preserve its rights. It might be the case that CFI did wish to relinquish possession of the leased premises but preferred to do so voluntarily by exercising its "kick-out" rights rather than involuntarily by means of an unlawful detainer lawsuit.

Shapell has gained nothing from its counsel's breach of ethics and lack of courtesy. If counsel had complied with its obligation to advise CFI of the intent to request a default judgment, or had extended common courtesies, the unlawful detainer action in all probability would have by now been decided on the merits. And if Shapell would have prevailed, as it believes it should, then Shapell would be in rightful possession of the leased premises. Instead, after much time and expenditure of attorney fees, the default judgment is being reversed, the parties are back to square one, and Shapell faces the prospect of CFI regaining possession and/or recovering monetary restitution.

DISPOSITION

The order denying CFI's motion to set aside default and default judgment is reversed. The matter is remanded for further proceedings. In the interest of justice, on remand the Presiding Judge of the Orange County Superior Court shall assign the case to a different judge. (§ 170.1, subd. (c).) CFI to recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


GOETHALS, ACTING P. J.


MOTOIKE, J.

23