Filed 8/29/25  Russell v. Russell CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CLIFF R. RUSSELL,<br><br>    Plaintiff and Respondent,<br>v.<br><br>ROBERT J. RUSSELL, as Trustee, etc.,<br><br>    Defendant and Appellant. | A167911<br><br>(Sonoma County<br>Super. Ct. No. SCV268721) |

Defendant Robert Russell, as trustee of his revocable trust (Robert or Robert as trustee), appeals from two interlocutory default judgments entered against him in a partition action brought by his son, plaintiff and respondent Cliff Russell (Cliff).[1]  Robert contends that:  (1) the default judgments are void because Cliff did not join other persons with an interest in the property (Code Civ. Proc., § 872.510);[2] (2) the trial court should not have entered his default because he was entitled to a 30-day extension to respond to the amended

---

[1] Because the parties share the same surname, we use their first names to avoid confusion.

[2] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

1

complaint once he served a declaration stating he could not timely meet and confer (§ 430.41); and (3) Cliff did not provide adequate notice of his request for a default judgment or support it with sufficient evidence. To the extent that the interlocutory judgments award punitive damages to Cliff, we will reverse. But in all other respects, we will affirm them.

## I. FACTS AND PROCEDURAL HISTORY

### A. Cliff's Partition Action

In June 2021, Cliff filed a partition action against Robert as an individual and against Robert as trustee of his revocable living trust. Before Robert responded to the complaint, Cliff filed a verified amended complaint for partition. The amended complaint named as a defendant only Robert as trustee of his trust ("ROBERT J. RUSSELL, AS TRUSTEE OF THE ROBERT JOHN RUSSELL TRUST, U/A DATED MARCH 16, 2001") and no longer named as a defendant Robert as an individual.

According to the amended complaint, Robert and Cliff owned certain real property (Property) as tenants in common, with title vested in Cliff (holding a 1/10 interest) and Robert as trustee (holding a 9/10 interest). The amended complaint explained that "Defendant had owned the Property alone as an individual" beginning in 2018, when he purchased it using a nonconventional high-interest loan.[3] The Property included a main structure and a second structure. In January 2020, Cliff entered into an oral agreement with "Defendant" to obtain a conventional loan, to evenly split the

---

[3] The amended complaint is confusing where it alleges that the "Defendant," identified as Robert as trustee, performed acts that were more likely taken by Robert as an individual. This has no bearing on the resolution of this appeal, however. Robert as trustee was the only named defendant, and the corrected default and both interlocutory default judgments were entered solely against Robert as trustee.

2

closing costs, and to maintain and improve the Property, including turning the second structure into an accessory dwelling unit (ADU). In May 2020, they obtained conventional financing in the amount of $556,000. As the mortgage was ready to close, Cliff was surprised to see that he was listed as having only a 10-percent ownership stake, but he was unconcerned because he believed that he and his father were partners.[4] The plan was for Cliff's sister — also Robert's daughter — to live in the main house while Robert and Cliff would rent out the ADU and split the net proceeds equally.

Cliff renovated and improved the Property as agreed, expending over $110,000, of which he sought recovery in his amended complaint. Robert moved into the ADU in November 2020, depriving Cliff of his share of the expected rental income, of which Cliff sought at least $15,000. Robert did not contribute to the mortgage payments, and Cliff paid all of them, of which he sought recovery in excess of $26,541. Robert brought 15–20 dump truck loads of construction debris onto the Property, which allegedly lessened its value

---

[4] It is unclear how and when Robert, as an individual, conveyed his interest in the Property to Cliff and Robert's trust. The grant deed is not in the record. Cliff asserts in his respondent's brief that Robert may have transferred 10 percent to Cliff and then transferred his remaining 90-percent interest into his trust. Alternatively, Robert may have transferred 100 percent of the Property into his trust and then transferred 10 percent of it out of the trust to Cliff. The former seems more likely in light of the record. Attached to the amended complaint is an excerpt from a June 2020 title guarantee, which identified the May 2020 deed of trust as having a borrower of "Robert J. Russell, an unmarried man," holding a 90-percent interest and Cliff holding a 10-percent interest. The deed of trust corresponding to the May 2020 refinancing states the same. According to its title, the trust was created in March 2001. It appears, therefore, that Robert conveyed 10 percent to Cliff in connection with the May 2020 refinancing and transferred his remaining 90-percent interest to his trust sometime between then and June 2021, when the original complaint was filed. The timing is not germane to the issues before us.

3

and would cost $26,000 to remove.  In addition, Robert installed a septic tank, leach lines, and an electrical panel without proper permits, and the remediation cost for those matters would exceed $10,000.

Cliff allegedly asked Robert to agree to sell the Property and divide the proceeds, but Robert refused.  In fact, Robert demanded that Cliff transfer his ownership interest to Robert in exchange for not being disinherited.

Cliff's prayer for the partition cause of action sought partition by sale and recovery of at least $187,953 that Cliff had incurred plus other expenses, including future costs of partition and reasonable attorney fees.  The amended complaint alleged that partition by sale was "the more equitable remedy than division in kind" because the Property included a single-family residence and an ADU, making a division in kind infeasible.[5]

According to a proof of service filed with the trial court, "Robert J. Russell, Trustee, The Robert John Russell Trust u/a dated 3/16/2001" was personally served with the summons and amended complaint on July 9, 2021. The deadline to file a response was August 9.

B.  Entry of Default

Robert was represented in the litigation by attorney Simran Sekhon. At 5:41 p.m. on August 9, 2021, Sekhon's law clerk, Nicole Renfroe, emailed a declaration by Sekhon to Cliff's attorney, Pauline Deixler.  Sekhon averred that he was making the declaration in accordance with section 430.41, that the "[d]efendant" was served with the summons and pleadings on July 9, 2021, and that a response was due on August 9, 2021.  Sekhon also averred: "I was unable to meet and confer with [Cliff's] counsel five days prior to the

_____

[5] In addition to the partition cause of action, the original and amended complaints alleged claims for accounting, dissolution of partnership, common count, and breach of fiduciary duty.  The interlocutory judgments on appeal only address the partition claim.

4

deadline for a first responsive pleading because I only recently received the Complaint as it was only served on Defendant." Sekhon further stated, without evidence, that Renfroe "attempted to contact [Cliff's] counsel, but no response came." According to Deixler's paralegal (Frederic Castaneda), Renfroe called Deixler's office earlier that day to obtain a three-day extension to file an "answer" due to Sekhon being in trial.

The next morning, Deixler emailed Renfroe and Sekhon. Deixler stated that, even though a courtesy copy of the summons and complaint was sent to Sekhon's office 30 days earlier, she was granting Sekhon a three-day extension of the time to "answer" the amended complaint.

Robert did not file a response to the amended complaint by the extended deadline or the following week. Deixler's paralegal, Castaneda, emailed Sekhon's office that the extended filing deadline had passed.

Cliff filed a request for entry of default on August 19, 2021, against Robert as trustee and, incorrectly, Robert as an individual. The default was entered that same day against Robert in both capacities and served the following day.[6]

C. Cliff's Attempts to Obtain a Default Judgment

The parties unsuccessfully met and conferred through counsel in September 2021. In mid-October, Cliff's counsel pointed out to Robert's counsel that Robert had not filed a motion to set aside the default.

In mid-December 2021, Cliff filed a request for a default judgment, but the trial court denied it for lack of supporting evidence. In January 2022,

_____

[6] Cliff's attorney should have given written notice of her intent to take a default. (*Lasalle v. Vogel* (2019) 36 Cal.App.5th 127, 135 ["an attorney has an ethical obligation to warn opposing counsel that the attorney is about to take an adversary's default"].) However, Robert did not raise this issue in his motions to set aside the default.

Cliff filed a second request for a default judgment, along with his supporting declaration. The declaration incorrectly stated that the amended complaint was brought against Robert as an individual and as trustee. The declaration otherwise repeated the central allegations of the amended complaint.

D. Robert's First Motion to Set Aside the Default

In February 2022, Robert filed a motion under section 473, subdivision (b), to set aside the default on the basis of "mistake of fact and/or excusable neglect." Robert argued that Cliff's counsel had represented that she would not file the complaint and that they were going to settle the issues informally. Robert attached his proposed answer, as trustee, to the amended complaint. The proposed answer was verified by Robert's counsel, but not Robert.[7]

Cliff opposed Robert's motion, arguing that Sekhon's claim of ignorance about the amended complaint was not credible. In addition, Cliff argued that his attorney had alerted Sekhon that the default request was going to be filed.

In his reply papers, Robert argued that the default should nonetheless be set aside "for reasons of public policy" and because of the prejudice to Robert. Robert also argued, for the first time, that the default should not have been entered because the amended complaint alleged that only Robert as trustee was the defendant while the default was entered against both Robert as trustee and Robert as an individual.

After a July 2022 hearing, the trial court denied the motion to set aside for lack of evidence of excusable neglect. The court noted that no affidavit of attorney fault had been filed and that if Robert "present[s] a more persuasive

_____

[7] In March 2022, after Robert filed his motion to set aside the default, the trial court denied Cliff's second request to enter the proposed judgment. Cliff again filed a declaration in support of his application for a judgment in August 2022, apparently to no avail.

6

explanation or seek[s] to set aside the default based on [an] attorney affidavit of fault, the court may consider such a basis for setting aside the default."

### E. Robert's Second Motion to Set Aside the Default

Sekhon did not submit an attorney affidavit of fault. Instead, on July 19, 2022, Robert filed a motion to set aside the default under section 473, subdivision (d), claiming that the default "was entered as [the] result of an error of the Court." The motion reiterated, as the sole ground for setting aside the default, that the entry of default was void in its entirety because it applied to Robert as an individual and as trustee, while the only named defendant in the amended complaint was Robert as trustee.

Cliff opposed Robert's motion, arguing (among other things) that the inclusion of Robert as an individual was an error that did not affect the default entered against Robert as trustee.

In a minute order issued in January 2023, the trial court ruled that the entry of default was void as to Robert as an individual but valid as to Robert as trustee. It further ordered that a corrected request for entry of default, if submitted, would be entered nunc pro tunc.

### F. Entry of Corrected Default and Default Judgment

On February 8, 2023, Cliff filed a corrected request for entry of default and a new application for entry of a default judgment. The documents were electronically served on Robert's attorney the same day.

On March 3, 2023, Cliff filed and electronically served notice of an ex parte application for entry of an order regarding Robert's motion to set aside the default, a corrected request for default, and an interlocutory (default) judgment. The application advised that it was submitted "based upon instruction from the Honorable Judge Oscar Pardo received during the case management conference on February 16, 2023." A supporting memorandum

of points and authorities explained that the trial court, at the February 16 case management conference, directed Deixler to submit ex parte the proposed order, request for default, and proposed interlocutory judgment that had been filed on February 8. The application also included Cliff's supporting declaration, filed on February 8, and a declaration from Deixler.

Cliff's declaration reiterated the allegations of the amended complaint and provided evidence of the amounts he sought to recover. According to his declaration, Cliff spent $110,412 to renovate the Property, and he was entitled to 90 percent of that sum. He asserted that he was also entitled to half the rental value of the ADU, which he estimated at $1,250 per month. He provided amounts related to the septic tank and other nonpermitted additions. And he alleged that "Defendant," through counsel, demanded that Cliff transfer his 10-percent ownership interest to "Defendant" or "Defendant" would disinherit him.

Although Cliff's notice indicated that the application for the proposed order, corrected default, and interlocutory judgment would be made on March 6, 2023, the trial court acted on March 3. By written order issued that day, the court granted Robert's motion under section 473, subdivision (d) to set aside the default with respect to Robert as an individual but affirmed that the court would enter nunc pro tunc the corrected entry of default naming only Robert as trustee.

Also on March 3, 2023, the trial court entered a modified version of Cliff's proposed interlocutory judgment against Robert as trustee (March 3 Judgment). Consistent with that proposed judgment, the court's judgment recited that Cliff had a 10-percent ownership interest in the Property and that the trust had a 90-percent interest. Finding that a "sale of the Property and division of the proceeds is more equitable than division of the Property,"

8

the judgment also appointed a "[p]artition referee" to sell the property and distribute the proceeds consistent with the judgment. It then ordered that certain amounts be paid to Cliff from the sale proceeds, including "90% of the total amount of attorney's fees paid by [Cliff] [in pursuing the partition action for the common benefit of the parties], in an amount to be established by [Cliff's] and [Cliff's] attorney's declaration at confirmation of the sale of the" Property. Other amounts to be paid from the proceeds included 90 percent of the mortgage payments Cliff made from July 2020 to the sale; 90 percent of the $110,412 Cliff paid for necessary improvements and renovations; $1,250 per month for each month from July 2020 to the sale (as 50 percent of the ADU rent); and 100 percent of the cost to remove the debris Robert dumped on the Property and to retroactively permit the septic tank and related items.

However, the trial court modified Cliff's proposed judgment by adding the following language to it: "Proof of such costs shall be accounted for by the Referee, and be included in a final report to be submitted to the Court." In addition, the court struck a paragraph in the proposed judgment that would have awarded punitive damages based on a finding that "Defendant acted with fraud or malice" by demanding Cliff's transfer of his 10-percent interest "to Defendant without any payment or be immediately disinherited from Defendant's estate." Lastly, the court ordered that "[a]ll remaining proceeds of the sale are to be divided among [Cliff] and [Robert] in proportion to their 90%/10% proportionate ownership interests as set forth in this judgment."

On March 6, 2023, the trial court refiled Cliff's March 3 ex parte application. On March 13, the court denied the proposed order to enter the corrected default as moot because it had already been processed, but the court filed the proposed interlocutory judgment a second time (March 13 Judgment). The March 13 Judgment was the same as the March 3 Judgment

9

except that it lacked the court's modifications. As a result, the March 13 Judgment, unlike the March 3 Judgment, awarded punitive damages in an amount to be ascertained, finding that "Defendant acted with fraud or malice" by demanding that Cliff transfer his 10-percent interest or be "immediately disinherited from Defendant's estate."

G. Robert's Appeal

On May 22, 2023, Robert as trustee appealed from the March 3 Judgment and the March 13 Judgment. Robert designated a reporter's transcript of five hearings, but no reporter was present for any of them. He has not provided an agreed upon or settled statement.

## II. DISCUSSION

Partition is " 'the procedure for segregating and terminating common interests in the same parcel of property.' " (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1404–1405.) In a partition action, the trial court initially issues an interlocutory judgment that decides the plaintiff's right to partition (§ 872.710) and the parties' respective interests in the property (§ 872.610). (See § 872.720, subd. (a); *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 142-143.) The interlocutory judgment typically dictates the manner of partition as well. (§§ 872.810–872.840). Thereafter, a court-appointed referee divides or sells the property (§§ 873.010, subd. (a), 873.210, 873.510, 873.790), and the court orders disbursement of the sale proceeds (§ 873.810) and enters a final judgment of partition (§ 874.210).

Robert offers several grounds for reversing the interlocutory default judgments. For the reasons stated below, we conclude that his contentions lack merit except for his challenge to the punitive damages award in the

10

March 13 Judgment. But first, we address Cliff's argument that the appeal is untimely, which we find unpersuasive.

A. Timeliness of Appeal

Under Rule 8.104 of the California Rules of Court, a notice of appeal must be filed by the earliest of the following: 60 days after the superior court clerk serves notice of entry of judgment or a filed-endorsed copy of the judgment; 60 days after a party serves notice of entry of judgment or a filed-endorsed copy of the judgment; or 180 days after entry of judgment.

Robert filed his notice of appeal on May 22, 2023, more than 60 days after entry of the March 3 and March 13 Judgments. Cliff contends that we should therefore dismiss Robert's appeal as untimely. However, the record does not include a notice of entry of judgment or a proof of service of the judgment, and Robert noted on his civil case information statement that neither was served. According to the record, the deadlines for filing the appeal based on those documents do not apply. Accordingly, Cliff's notice of appeal, which was filed within 180 days after the entry of the judgments, was timely.

B. Failure to Join Parties

Under section 872.510, partition actions require joinder of "all persons having or claiming interests of record or actually known to the plaintiff or reasonably apparent from an inspection of the property, in the estate as to which partition is sought."

Robert contends that numerous persons and entities had an interest in the property: the mortgage holder; Robert as an individual, as a beneficiary of his revocable trust, as a tenant on the property, and as a coborrower under the mortgage; Cliff's sister as a tenant; and the "oral partnership" between Robert and Cliff to own and improve the property. Because they were not

11

joined as parties to this case, Robert argues that the default judgment against Robert's trust, which *was* named as a defendant, is void and must be reversed.

Robert did not raise this argument in his motions to set aside the judgment. In any event, his argument is incorrect. Section 874.225 provides that, subject to exceptions not material here, the judgment in a partition action "does not affect a claim in the property or part thereof" of nonjoined interest holders if "[t]he claim was actually known to the plaintiff or would have been reasonably apparent from an inspection of the property at the time the lis pendens was filed or, if none was filed, at the time the judgment was entered." (§ 874.225, subd. (b).) Robert does not demonstrate in his opening brief that any of the persons or entities he thinks should have been joined have lost any claim by Cliff's failure to join them in the litigation. Moreover, nothing in section 874.225 suggests that the failure to join interest holders voids an interlocutory judgment that was properly entered against a named defendant.

It is true that *co-owners* must be joined to obtain a partition of property. (See *Solomon v. Redona* (1921) 52 Cal.App. 300, 305-306 [decided under § 389].) But as alleged in the amended complaint, the only owners of the Property are Cliff and Robert as trustee (or more accurately, the trust). The first paragraph of the amended complaint alleges: "The Property is held as a tenancy-in-common by CLIFF R. RUSSELL ('Plaintiff'), the title owner of an undivided one-tenth (1/10) interest in the Property, and defendant ROBERT J. RUSSELL, TRUSTEE, THE ROBERT JOHN RUSSELL TRUST A/u DATED MARCH 16, 2001, ('Defendant'), the title owner of an undivided nine-tenths (9/10) interest in the fee simple title to the Property." By defaulting, Robert as trustee is deemed to have admitted those allegations.

12

(*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281 (*Kim*) [defaulting defendant admits the well-pleaded factual allegations of the complaint].)  All co-owners — Cliff and Robert as trustee of the trust — have therefore been joined to the litigation.

Robert also contends reversal is required under section 389, which states in part:  "A person who is subject to service of process and whose joinder will not deprive the [trial] court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . as a practical matter impair or impede his ability to protect that interest."  (§ 389, subd. (a).)  But Robert does not establish that any of the purported interest holders are covered by section 389.  And even if they were, their absence from the case would not compel the reversal of the default judgment as to Robert as trustee.  "Failure to join an 'indispensable' party is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand."  (*Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495, 500.)  Robert therefore fails to establish that the default judgment is void as against Robert as trustee.[8]

---

[8] Robert's reliance on *Wernse v. Dorsey* (1935) 2 Cal.2d 513, 514, is misplaced.  There, the trial court abused its discretion in setting aside a default judgment for partition, which was entered after the defendant failed to appear for trial.  The Court of Appeal noted that a lienholder, who had loaned money to the plaintiff, had not been joined as a party.  But the reversal was not because the lienholder was absent from the litigation.  It was because the trial court wrongly ordered the sale of the property subject to the lien; thereby, making the defendant liable for half of a loan to which he was not a signatory — a result the defendant could not have anticipated from the allegations of the complaint.  (*Id.* at pp. 514–516.)

C. Timeliness of Default Entry

Robert next contends that the entry of default on August 19, 2021, was improper because he was entitled to an automatic 30-day extension of time to respond to the amended complaint once his attorney emailed a meet and confer declaration under section 430.41 on August 9, the original deadline to respond to the amended complaint.  This argument is forfeited because he did not make it below.  (*Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal' "].)  It also fails on the merits.

Indeed, Robert's argument misconstrues section 430.41.  Subdivision (a)(2) of section 430.41 states:  "The parties shall meet and confer at least [five] days before the date the responsive pleading is due.  If the parties are not able to meet and confer at least [five] days prior to the date the responsive pleading is due, the demurring party shall be granted an automatic 30-day extension of time within which to file a responsive pleading, *by filing and serving, on or before the date on which a demurrer would be due, a declaration stating under penalty of perjury that a good faith attempt to meet and confer was made and explaining the reasons why the parties could not meet and confer*.  The 30-day extension shall commence from the date the responsive pleading was previously due, and the demurring party shall not be subject to default during the period of the extension.  Any further extensions shall be obtained by court order upon a showing of good cause."  (Italics added.)  Thus, that subdivision requires that a defendant meet and confer with the plaintiff before filing a *demurrer*.  And the italicized language of subdivision (a)(2) provides that, if the parties have not met and conferred despite good faith efforts and if the defendant still wants to file a

14

demurrer, the defendant may obtain additional time to meet and confer by extending the deadline to respond to the complaint.

Section 430.41 does not help Robert. In the first place, his declaration did not describe a good faith attempt to meet and confer or adequately explain why the parties could not have met and conferred. Sekhon claimed that he was unable to meet and confer with Cliff's counsel because he "only recently received the Complaint as it was only served on Defendant." But Sekhon knew about the complaint roughly 30 days earlier because Cliff's counsel sent him a copy and Sekhon declined to accept service. Sekhon also claimed that his law clerk "attempted to contact [Cliff's] counsel, but no response came." Yet, that lone attempt did not occur until the last day to respond to the amended complaint. Moreover, while section 430.41 allows additional time to discuss a potential *demurrer* and defects in the complaint, Robert's declaration did not communicate that he wanted to meet and confer about those concerns. In fact, when Robert ultimately moved to set aside the default, his proposed responsive pleading was an answer, not a demurrer.

In any event, to obtain an extension of time under section 430.41, the defendant must serve *and file* counsel's declaration before the deadline. (§ 430.41, subd. (a)(2).) Sekhon served his declaration after business hours on the last day to respond to the amended complaint (August 9, 2021), and he *did not file* the declaration with the trial court.

Sekhon's eleventh-hour declaration did not extend the time to respond to Cliff's amended complaint, and Robert fails to establish that the default should not have been entered.

D. Evidence and Notice Regarding the Default Judgments

Robert argues that Cliff's applications for entry of default and default judgment lacked adequate information and admissible evidence. He further

argues that the judgments were entered without "any proper notice or hearing." His arguments are meritless except for his challenge to the award of punitive damages.

###### 1. Applications for Default

Robert states that Cliff's "two ex parte applications for entry of default were almost totally devoid of required information." As an example, he contends that they did not include a request for default form with the " '[c]ourt [j]udgment' " box checked on paragraph 1(d). However, Cliff's request for default filed on August 19, 2021, did check paragraph 1(d). Robert further argues that Cliff did not file an affidavit stating that a copy of the request for entry of default had been mailed to his attorney of record. However, that affidavit is included in the default request at paragraph 6.

Robert also argues that Cliff's two "applications for entry of default" did not include a memorandum of costs and disbursements; a statement of damages; the amount sought for attorney fees; a declaration by Cliff's counsel regarding fees sought; a statement of interest on damages; a statement on punitive damages; admissible evidence of title; the basis for partition by sale rather than division; or evidence regarding renovations and improvements, mortgage payments, damages, costs, and retroactive permitting. But that information is not required for entry of a default. (See § 585.) As for entry of a default *judgment*, the question is whether the totality of Cliff's material provided notice and substantial evidence to support the interlocutory judgments of partition. As discussed next, Robert, for the most part, fails to show that the allegations of the amended complaint and Cliff's declarations did not provide sufficient notice and substantial evidence.

## 2. Evidence Supporting the Interlocutory Judgments

Robert contends that "the two default interlocutory judgments awarded uncertain damages and [attorney] fees without basis in admissible evidence in the award" because it awarded costs in an unknown amount; attorney fees based on a future determination; reimbursement for improvements, rent without proof of lease or rental value, costs to be proved, costs for cleaning up debris and retroactive permitting; and punitive damages of an unknown amount.

But the March 3 and March 13 judgments were *interlocutory* judgments for partition. Robert does not show that an award of attorney fees and costs is improper in a partition action, and it made sense for the trial court to reserve any calculation of those amounts for a later phase of the case. (We address the issue of punitive damages later in this opinion.) To the extent the court did award specific amounts — such as $110,412 for Cliff's improvement and renovation of the Property and $1,250 per month as Cliff's share of the ADU rental value — the amounts were supported by the allegations of the amended complaint and by Cliff's declaration. Moreover, the court included in the March 3 Judgment that "[p]roof of such costs shall be accounted for by the Referee, and be included in a final report to be submitted to the Court." Robert fails to demonstrate error.

## 3. Partition by Sale

Robert argues that the trial court abused its discretion by ordering partition by sale rather than partition in kind. We disagree.

The verified amended complaint alleged that partition by sale would be appropriate because a physical division of the Property would be infeasible. Cliff alleged: "Partition by sale is the more equitable remedy than division in kind for the Property. The Property is an improved single-family residence,

17

and an ADU making a division in kind unfeasible as the co-owners would receive an interest valued at a price materially less than the share of proceeds the co-owners would receive through the sale of the Property as a whole, thereby resulting in a loss to the co-owners." Because Robert as trustee defaulted, all well-pleaded factual allegations were deemed admitted. (*Kim, supra*, 201 Cal.App.4th at p. 281.) In addition, Cliff stated in his declaration that the Property included a house and an ADU and requested a partition by sale "because the Property cannot be subdivided equally."

Substantial evidence therefore supported the trial court's ruling. (§ 872.820 ["Notwithstanding Section 872.810, the court shall order that the property be sold and the proceeds be divided among the parties in accordance with their interests in the property as determined in the interlocutory judgment [when]: [¶] . . . [¶] . . . [t]he court determines that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property"].) Because the Property consists of a single-family residence and an ADU, it is reasonable to infer that Robert as trustee would not be able to receive the full value of his 90-percent interest in the Property without a partition by sale. Furthermore, 90 percent of the Property is held by Robert's trust, and the court has discretion to order partition by sale when part of the property is subject to an express trust. (§ 872.840, subd. (a) ["Where the property or an interest therein is subject to an express trust, the court may, in its discretion, order that the property be sold"]; see *Richmond v. Dofflemyer* (2018) 105 Cal.App.3d 745, 758.) Accordingly, Robert fails to demonstrate an abuse of discretion.

### 4. Punitive Damages

Robert next contends that the punitive damages award in the March 13 Judgment was improper because there was no clear and convincing evidence

18

of oppression, fraud or malice (Civ. Code, § 3294) and because there was no evidence of his financial condition. He also complains, more broadly, that Cliff's applications for judgment did not include any "statement on punitive damages sought."

Before turning to the merits of Robert's contentions, we consider the fact that the March 3 and March 13 Judgments differ on punitive damages.[9] The March 13 Judgment contains a paragraph awarding them to Cliff; the March 3 Judgment does not because the court struck that paragraph. The parties do not adequately explain which of the two judgments should prevail, and the record is unclear whether the court intended to amend the March 3 Judgment when it entered the March 13 Judgment or whether the March 13 Judgment was entered inadvertently. But we need not decide which judgment controls. We conclude instead that, to the extent there was an award of punitive damages, we must reverse it.

As Robert argues, Cliff's applications for judgment did not provide sufficient information for the trial court to award punitive damages. Civil Code section 3294, subdivision (a) only authorizes punitive damages "[i]n an action for the *breach of an obligation not arising from contract*, where it is proven by clear and convincing evidence that *the defendant* has been guilty of oppression, fraud, or malice." (Italics added; see Civ. Code, § 3294, subd. (c) [defining oppression, fraud, and malice].) Moreover, to demonstrate entitlement to punitive damages in a default judgment, Cliff had to show that he served a notice reserving the right to seek punitive damages of a specified amount before entry of the default. (§ 425.115; see § 580, subd. (a) [limiting

---

[9] At oral argument, the parties appeared to agree that, aside from the issue of punitive damages, the differences between the two judgments were minor and did not need to be addressed separately from Robert's other challenges to the judgments.

default judgment recovery to what is alleged in the complaint or in a statutory notice]; see Civ. Code, § 3295, subd. (e) [prohibiting an allegation of a specific amount of punitive damages in the complaint]; *Behm v. Clear View Technologies* (2015) 241 Cal.App.4th 1, 8–9.) Although Cliff provided evidence that "Defendant" demanded that he transfer his ownership to avoid being disinherited by "Defendant" and although Robert is deemed to have admitted a similar allegation in the amended complaint, Cliff failed to explain how the statutory requirements for punitive damages were met or establish that the requisite statutory notice for an award of punitive damages in a default judgment was provided.

Accordingly, the March 13 Judgment is reversed to the extent it awards punitive damages.

### 5. Notice and Opportunity to Respond

Robert complains that "[n]either of the two default partition interlocutory judgments were entered with any proper notice or hearing." He points out that Cliff's March 3, 2023 application seeking entry of judgment gave notice that the application would be made on March 6. The trial court, however, entered judgment on March 3.

Robert's argument is meritless. Cliff filed the March 3, 2023 application pursuant to the trial court's order at the February 16 hearing. The application attached Cliff's declaration, noting that the declaration had been previously filed on February 8. Long before March 3, therefore, Robert knew that Cliff was going to request the default judgment, knew the contents of the judgment Cliff was going to seek, and knew the evidence Cliff was going to submit in support of that judgment. Moreover, Robert does not show that, if he had additional notice or opportunity to be heard, he would have obtained a more favorable judgment.

20

### 6. Request for Entry of Default Judgment

Lastly, Robert contends that Cliff failed to serve him with a "properly drafted request for entry of default" because he did not include an affidavit stating that a copy of the request had been mailed to Robert's attorney of record. As discussed *ante*, that affidavit was encompassed within Cliff's original request for entry of default. It was also included in the request for corrected entry of default (Judicial Council Forms, form CIV-100) that Cliff filed and served on March 3, 2023. And the proof of service shows that Cliff's proposed interlocutory judgment, which he urged the trial court to enter as a result of Robert's (as trustee) default, was included in the materials Cliff served on Robert's attorney on February 8 and March 3. At any rate, Robert fails to demonstrate that the purported absence of the affidavit was prejudicial.

## III.  DISPOSITION

The March 13 Judgment is reversed to the extent that it awards punitive damages. The March 3 and 13 Judgments are affirmed in all other respects. Cliff is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


CHOU, J.

WE CONCUR.

SIMONS, Acting P. J.
BURNS, J.


A167911/ *Russell v. Russell*